James **BAYLEY**, Plaintiff,

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant.**

Civ. No. 89–0157–P.

United States District Court, D. Maine.

Jan. 3, 1990.

George F. Leahy, Boston, Mass., for plaintiff.

John S. Whitman, Richardson & Troubh, Portland, Me., for defendant.

## MEMORANDUM OF DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

GENE CARTER, Chief Judge.

On October 27, 1989, the Honorable David M. Cohen, United States Magistrate, filed with the Court his Recommended Decision on Defendant's Motion to Dismiss or in the Alternative for Summary Judgment (Docket No. 9). Plaintiff filed his objections thereto on November 3, 1989 (Docket No. 10). The Court has reviewed and considered the Magistrate's Recommended Decision, together with the entire record, and has made a *de novo* determination of all matters adjudicated by the Magistrate's Recommended Decision to which objection has been made. Because this Court does not concur with the recommendations made by the United States Magistrate in his Recommended Decision, the Court hereby rejects the Recommended Decision and acts *de novo* upon the subject motion.

The Magistrate treats the motion as one to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on the basis that the matter can be resolved by reference to the pleadings alone. Recommended Decision at 1. He thereafter sets out the material facts as he has gleaned them from the factual allegations of the complaint.

On January 4, 1985, while employed by Monitor Construction Company ("Monitor") in the construction of One City Center, the plaintiff slipped and, due to the absence of adequate perimeter protection, fell from the fourth or fifth level of the building sustaining serious and permanent injuries. *Pursuant to its various insurance contracts with Monitor and its affirmative conduct, the defendant undertook and assumed a duty to provide Monitor with loss prevention services and/or a defined loss prevention program and services included at least three visits to the site by one or more of its loss prevention representatives, the observation of prevailing safety conditions, and recommendations for the improvement of perimeter protection for employee safety.* The defendant negligently failed to ensure adequate perimeter protection at the construction site as a direct consequence of which the plaintiff fell and was injured. *Id.* at 2 (emphasis added).

This Court reads this statement of the facts to incorporate a conclusion that all of Defendant's activities with respect to inspection or evaluation of the perimeter protection afforded at the construction site were done as integral parts of Defendant's contractual or statutory duties under the Maine Workers' Compensation Act as an insurer of Monitor's obligations under the same Act.

As the Magistrate correctly stated in his Recommended Decision, on a motion to dismiss the material allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiff. A careful reading of the pertinent language of the complaint satisfies this Court that the Magistrate did not apply this rule and that the conclusion he reached is not warranted in this case. Because the difference between the finding, as made by the Magistrate, and the pertinent allegations of the complaint is crucial in the application of Maine law on the point, further proceedings are required to determine whether Defendant is immunized under the Maine Workers' Compensation statute for those activities bearing upon inspection and consultation with Monitor about the various aspects of the site's perimeter protection.

In Count I of the complaint, Plaintiff sets out his claim of negligence against Defendant. In paragraphs 6–9, he alleges the facts in respect to his injury on the construction site at 240 Middle Street, Portland, Maine, while in the employ of Monitor Construction Company, including the injuries which he sustained and his ultimate entitlement to various elements of workers' compensation benefits. He alleges that Defendant was Monitor's compensation insuror extending coverage to the site at the time of Plaintiff's injury. Then, the complaint states as follows:

10. Attendant to this contract for Workers' Compensation Insurance, *other insurance contracts and written service contracts* between Monitor Con-

struction Company and the Liberty Mutual Insurance Company, Liberty Mutual undertook and assumed a duty by affirmative conduct to provide loss prevention services and/or a defined loss prevention program to Monitor Construction Company at the subject job site.

Complaint, ¶ 10, at 2 (Docket No. 1a) (emphasis added). The plain language of paragraph 10 demonstrates that Plaintiff is alleging that Liberty Mutual's obligations concerning the provision of loss prevention services arose not solely from its capacity as Monitor's workers' compensation insurer but from "other insurance contracts and written service contracts" which existed between Monitor and Defendant as well. Thus, the Magistrate's determination, *see supra* at 2, that Defendant's activities arose *exclusively* out of Monitor's workers' compensation insurance contracts is too narrow a reading to accurately represent the full thrust of Plaintiff's *alleged* basis for the existence of Defendant's duty.

In his objections to the Recommended Decision, Plaintiff highlights the thrust of his actual allegations in contrast to the Magistrate's construction of them:

> The dispositive negligence issue in the case *sub judice* is whether a compensation insurer should be immune from civil suits commenced by an employee of the insured due to inspections done by the insurer *not provided pursuant to the workers' compensation law or insurance contract.*

Plaintiff's Written Objection (Docket No. 10) at 3 (emphasis added). Plaintiff goes on to point out that the present tort action is not based upon a breach of contractual or other duties arising out of Defendant's capacity as a workers' compensation insurer, "but from the separate, distinct and independent acts of malfeasance due to the negligent loss prevention services provided by the Liberty Mutual Insurance Company." *Id.* Thus, it is to be concluded from both the complaint and the objection that Plaintiff contends here, *inter alia,* that Defendant is liable because of its breach of (1) contractual duties imposed upon it under some insurance contract with Monitor other than a workers' compensation insurance contract and/or (2) breach of duties imposed upon Liberty by a "service contract" between it and Monitor.

The Court is satisfied that the analysis set forth in the Recommended Decision of the various pertinent provisions of the Workers' Compensation Act is unmistakably correct as abstract legal analysis. Further, the Court cannot fault the conclusion arrived at in the course of that analysis that employers *and their insurers* are immune from tort suits arising out of an employee's employment. The analysis, however, simply does not address the most relevant aspects of the factual situation that are disclosed by Plaintiff's complaint. All of the cases relied upon to support that analysis involve situations where it was sought to impose liability upon the insurance carrier for acts it had performed or failed to perform in its capacity as a workers' compensation insurer.

Here, under the complaint, that is not the exclusive basis of this Plaintiff's effort to impose liability upon Defendant. Moreover, a close reading of *Gibson v. National Ben Franklin Insurance Co.,* 387 A.2d 220 (Me.1978), and of the recently issued opinion in *Mills v. Travelers Insurance Co.,* 567 A.2d 446 (Me.1989), satisfies this Court that it cannot be said with certainty that a tort claim, based upon acts or failures to act by a compensation insurer that *are not an integral part of the insurer's function as a compensation carrier,* is barred by the immunity provisions of the Maine Workers' Compensation Act, 39 M.R.S.A. §§ 4 and 28 (1989).

First, in *Gibson,* while it is acknowledged that "the general immunity from common lawsuit provided by the workmen's compensation system is available to the carrier as well as to the actual employer," *Gibson,* 387 A.2d at 222, it is clearly indicated that the immunity does not apply to a case which "arises not out of appellant's original employment relationship but out of her relationship to the insurance carrier after her basic remedies as an injured employee had been settled through procedures provided by the Act." *Id.* This, the court said, was because the injury for which she

sought redress was not one arising out of her employment. The court held that the immunity did not bar the plaintiff's recovery for injuries flowing from the carrier's willful deprivation of the benefits she was entitled to under the compensation agreement. *Id.* Ultimately the court acknowledges that "a number of cases suggest that it is correct to treat a claimant who has acquired remedial rights under a compensation act as having a status, with respect to the compensation carrier, different from that of an employee who has not acquired such rights, with the result that the immunity from suit normally afforded a carrier by employment compensation acts is not available." *Id.* Such a conclusion must be based upon the principle that a carrier which provides workers' compensation coverage enjoys the benefit of the immunity provided by the Maine Act to the employer only to the extent that the conduct constituting the predicate for the imposition of liability is performed in the carrier's capacity as a workers' compensation insuror. In short, the immunity does not apply to all of the carrier's conduct simply because the carrier happens to provide, among other services, workers' compensation coverage.

This principle is even more clearly drawn from the *Mills* case.[1] The circumstances of that case are very similar to the present case; in fact, the provision in the compensation policy here which provides for inspection of insured premises by the carrier is very nearly identical to that set forth in the compensation policy involved in *Mills*. *See* Policy, § 4 at 2 (copy attached to affidavit of William A. Murphy, Jr.) (Docket No. 7), *and compare* policy provision in *Mills* at 447. The defendant insurance carrier in that case was the employer's long-standing workers' compensation liability insurer and had periodically conducted inspections of the employer's physical plant for over a period of twenty years. There is no indication that Travelers acted for the employer at any time in any capacity other than as its workers' compensation carrier. The Superior Court Justice who heard the

motion of the defendant for summary judgment found that the inspections performed by the Defendant, the alleged deficiency of which was the predicate for the imposition of liability in that case, "were integral to its function as the workers' compensation carrier and that as a matter of law the exclusive remedy provisions of the workers' compensation act barred Mills' action against Travelers." *Mills*, at 447.

The Maine Law Court, after conducting a statutory analysis remarkably similar to that of the Magistrate in this case, upheld the result obtained in the Superior Court. However, it did so on the basis that

the trial court properly found that the safety inspections were *integral to Travelers' function as a compensation carrier* and this activity did not remove Travelers from its identification with the employer pursuant to 39 M.R.S.A. § 2(1). *Limited to the undisputed facts of this case*, we hold that Travelers is immune from this third-party negligence action.

*Id.* at 448 (emphasis added). This Court thus reads the holding of *Mills* to be that the insurer enjoys the benefit of the employer's immunity under the Maine Act with respect to all conduct that is *integral* to the carrier's "function as a compensation carrier." *Id.* Where, however, the carrier engages in activity sufficient to "remove [it] ... from its identification with the employer pursuant to 39 M.R.S.A. § 2(1)," it loses the benefit of that immunity. *Id.*

Thus, it may be said in this case that to the extent any claim is set forth under paragraph 10 of the complaint herein based upon conduct of the Defendant which is integral to its function as a workers' compensation carrier for Monitor, such a claim is barred by the immunity provisions of the Maine Act. However, to the extent that a claim is set forth in paragraph 10 of the complaint based upon contractual undertakings or conduct of the Defendant which are sufficiently distinct from the Defendant's function as a workers' compensation

---

1. The Magistrate entered his Recommended Decision on October 27, 1989, and thus did not have the benefit of the teaching of the opinion in *Mills*, which was issued December 13, 1989.

carrier for Monitor to remove it from its identification with Monitor *as the employer*, it is at least still an open question whether under Maine law such a claim is barred by the statutory immunity provisions of the Act. Discerning the care with which the Law Court crafted its rationale in *Mills* and placed a clear and explicit factual limitation upon its holding, this Court believes that the Law Court intends that such claims should not be frustrated because of the immunity provisions of the Maine Workers' Compensation Act. If this reading of the Maine substantive law is correct, further proceedings are necessary to determine if Plaintiff can support, by evidence, a claim against Defendant in negligence based upon activities of the Defendant that are not integral to its functions as Monitor's workers' compensation carrier, and dismissal is not appropriate on the pleadings.

Accordingly, and for the foregoing reasons, Defendant's Motion to Dismiss or in the Alternative for Summary Judgment is hereby DENIED.